John MONTGOMERY, Plaintiff,

v.

William SCOTT, Administrator, Drug Enforcement Administration, Rochester, New York; Robert Neering, Administrator, Drug Enforcement Administration, Forfeiture Fund, Rochester, New York; John Fester, Agent-in-Charge, Drug Enforcement Administration, Rochester, New York; and William J. Snider, Chief Counsel, Assets Forfeiture Section, Washington, D.C.,[1] Defendants.

No. 91–CV–6338.

United States District Court, W.D. New York.

Sept. 17, 1992.

---

1. In the complaint, plaintiff misspells the names of two defendants. Defendants Fester's and Neering's names should be spelled F–E–R–S–T–E–R and N–E–A–R–I–N–G, respectively.

John Montgomery, pro se.

Brian M. McCarthy, Asst. U.S. Atty., Rochester, N.Y., for defendants.

## DECISION AND ORDER

LARIMER, District Judge.

Plaintiff John Montgomery ("Montgomery") brings this action against defendants William Scott, Robert Nearing, John Ferster and William Snider to set aside the administrative forfeiture of $32,000 in United States currency. Plaintiff challenges the forfeiture on two grounds: first, that he was deprived of his Fifth Amendment right to due process because the United States Drug Enforcement Administration (the "DEA") did not provide him with proper notice of the forfeiture proceedings; and second, that the DEA refused to provide him with information regarding the forfeiture that he requested under the Freedom of Information Act ("FOIA"). Defendants now move for summary judgment under Rule 56(c), Fed.R.Civ.P., dismissing both claims.

For reasons discussed more fully below defendants' motion for summary judgment dismissing plaintiff's due process claim is denied and their motion for summary judgment dismissing plaintiff's FOIA claim is granted. Furthermore, because I find on the undisputed facts that plaintiff was de-

prived of his right to due process of law in connection with the administrative forfeiture of the $32,000, summary judgment vacating the administrative forfeiture is granted, *sua sponte*, in favor of plaintiff.

## BACKGROUND

On November 23, 1988 officers of the Rochester Police Department ("RPD") entered plaintiff's apartment at 32 Buena Place in Rochester and arrested him on charges of possession and sale of a controlled substance. During the arrest the officers found and seized $32,000 in United States currency. After the arrest the RPD turned over to the DEA the crime reports on the arrest and seizure. Based on these reports, the DEA concluded that probable cause existed to forfeit the money under 21 U.S.C. § 881(a)(6)[2] as proceeds of a drug transaction.

The DEA commenced administrative forfeiture proceedings against the money in June 1989. On June 2, 1989, the DEA sent a notice, via certified mail, to 32 Buena Place, to notify plaintiff of the forfeiture proceedings. The notice explained that a claimant could contest the forfeiture in court by filing a claim and a bond within twenty days of the first publication of notice. It also explained that a claimant could seek an administrative remission or mitigation of the forfeiture by submitting a petition to the DEA's Asset Forfeiture Section within thirty days of receipt of notice. Notice of the forfeiture was published in three successive Wednesday editions of *USA Today*, starting on June 7, 1989 and ending on June 21, 1989.

On June 22, 1989, three weeks after the notice was sent, the post office, after three unsuccessful delivery attempts, returned it to the DEA as unclaimed. Thereafter, the DEA made no other attempts to notify plaintiff. Instead, the DEA waited until July 21, 1989, and then declared the money forfeited. During that time no claims were filed and no petitions for remission or mitigation were submitted.

Plaintiff contends that he was unaware of the forfeiture proceedings during the time that he could have contested or sought a remission or mitigation. He contends that he first learned of the forfeiture in late 1989 or early 1990, sometime before his trial in state court on charges of possession and sale of a controlled substance. Plaintiff learned of the forfeiture from his defense attorney, John DeMarco ("DeMarco"), who had discovered on or after July 21, 1989 that the money had been forfeited. (Compl. at A57).

Plaintiff did not immediately initiate any attempts to challenge the forfeiture. Instead, he waited until after his criminal trial, which resulted in his conviction on the charge of possession of a controlled substance. Following the conviction, plaintiff was sentenced to eighteen years to life imprisonment and incarcerated at Attica Correctional Facility ("Attica"). Once at Attica plaintiff began mailing numerous FOIA requests to several federal agencies in an attempt to determine the whereabouts of the money. Plaintiff sent FOIA requests concerning the $32,000 to, *inter alia*, the DEA's Asset Forfeiture Section, the U.S. Attorney's office for the Western District of New York, and the U.S. Customs office.

Both the U.S. Attorney's office and the U.S. Customs office responded with letters indicating that a search of their records revealed that they did not have any information regarding the $32,000. The DEA responded with a letter stating that before it would release the requested information, plaintiff had to submit a notarized signa-

---

**2.** 21 U.S.C. § 881(a)(6) provides:
(a) Subject Property. The following shall be subject to forfeiture to the United States and no property right shall exist in them: ...
　(6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this title, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this title, except that no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

ture or other proof of identity. The DEA also sent plaintiff a copy of the Declaration of Forfeiture, which stated that the $32,000 was forfeited to the United States pursuant to 19 U.S.C. § 1609.

Plaintiff subsequently commenced this suit to challenge the administrative forfeiture on the grounds that he was denied due process and that defendants did not comply with his FOIA requests for information regarding the forfeiture.

## DISCUSSION

■ Plaintiff contends that the basis for relief in this action is Rule 60(b)(1), (6), Fed.R.Civ.P. Rule 60(b)(1), (6), however, is not a basis for relief, because the money was forfeited pursuant to the DEA's administrative forfeiture proceeding. Nevertheless, because plaintiff is proceeding *pro se* I am obliged to read his pleadings and other submissions liberally and determine whether he can prove any "set of facts in support of his claim which would entitle him to relief." *Haines v. Kerner,* 404 U.S. 519, 521, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972). As the discussion below reveals, I find that plaintiff has stated a claim for relief.

### A. *Subject Matter Jurisdiction, Personal Jurisdiction, Qualified Immunity, and Sovereign Immunity*

Defendants first contend that I need not look to the merits of plaintiff's claims because this action should be dismissed on the grounds that this court lacks subject matter jurisdiction and personal jurisdiction, and that all defendants are shielded from liability under the doctrine of qualified immunity or, alternatively, the doctrine of sovereign immunity. I do not agree with defendants' arguments on these matters.

■ First, this is an action in which plaintiff seeks to set aside the administrative forfeiture of the $32,000. Plaintiff contends that the forfeiture should be set aside because he was not given proper notice of the forfeiture proceeding. His claim rests on his due process rights arising from the Fifth Amendment's due process clause. Consequently, I find, as have other courts, that subject matter jurisdiction arises from 28 U.S.C. § 1331.[3] *See Marshall Leasing, Inc. v. U.S.,* 893 F.2d 1096, 1102–03 (9th Cir.1990); *Willis v. U.S.,* 787 F.2d 1089, 1093 (7th Cir.1986); *Sarit v. Drug Enforcement Administration,* 759 F.Supp. 63, 69 (D.R.I.1991).

■ Second, it is abundantly clear from the complaint that in spite of naming the individual defendants as parties to this lawsuit, plaintiff is not suing the defendants in their individual capacities. Instead, this suit, which seeks to set aside the DEA's administrative forfeiture of $32,000, is one against the United States, and not against the named defendants. Accordingly, although the names of the individual defendants will remain in the caption, the true party-in-interest is the United States. Consequently, the defenses of lack of personal jurisdiction and qualified immunity are inapposite. *See Sarit,* 759 F.Supp. at 72–3.

■ Finally, sovereign immunity is not a bar to this action because the United States has waived its sovereign immunity to these types of actions through section 702 of the Administrative Procedure Act ("APA"), 5 U.S.C. § 702.[4] *See Marshall*

---

**3.** Defendants' contention that this court lacks jurisdiction because the *res* has been surrendered by the United States Marshals is without merit. If an administrative forfeiture is procedurally deficient, a district court has jurisdiction to correct the deficiency. *Onwubiko v. U.S.,* 969 F.2d 1392, 1398 (2d Cir.1992). *See also U.S. v. Aiello,* 912 F.2d 4 (2d Cir.1990), *cert. denied,* ── U.S. ──, 111 S.Ct. 757, 112 L.Ed.2d 777 (1991) (rejection of no *res* no jurisdiction in context of appellate jurisdiction) and *U.S. v. U.S. Currency in the Sum of $393,967,* 775 F.Supp. 43, 49 (E.D.N.Y.1991) (the government's argument that the monies have been deposited with

the U.S. Treasury and are therefore irretrievable is without merit).

**4.** Section 702 provides that:

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial relief thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of

*Leasing,* 893 F.2d at 1099; *Willis,* 787 F.2d at 1093; *Sterling v. U.S.,* 749 F.Supp. 1202, 1207 (E.D.N.Y.1990); *Sarit,* 759 F.Supp. at 66–69. Section 702 waives the sovereign immunity of the United States in actions seeking equitable relief from wrongful agency action, except in: (1) actions for money damages; (2) actions for which there is an adequate remedy at law;[5] or (3) actions which are precluded from judicial review by statute or committed by law to agency discretion.[6]

■ This action is one for equitable relief from wrongful agency action and it does not fall under any of the exceptions that limit the waiver of sovereign immunity under section 702. Because plaintiff seeks to vacate an administrative forfeiture, this action is one for equitable relief, and not one for money damages. That the United States may have to return a sum of money to plaintiff does not transform this action into one for money damages. It is well-settled that requiring the United States to return money that was wrongly taken or withheld is an equitable remedy. *See Marshall Leasing,* 893 F.2d at 1099 (citing *Bowen v. Massachusetts,* 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988)); *accord Sterling,* 749 F.Supp. at 1207, and *Sarit,* 759 F.Supp. at 67.

■ Next, no statute precludes judicial review of this action, nor is it committed by law to agency discretion. The Second Circuit has rejected the suggestion that courts lack jurisdiction to review the DEA's administrative decision. *Onwubiko,* at 1398. In addition, plaintiff seeks to review, on due process grounds, the adequacy of the pre-forfeiture notice. He does not seek to challenge the correctness of DEA's administrative forfeiture decision. The distinction is critical because even if a direct challenge to an agency's forfeiture decision

is prohibited, a challenge to the constitutional adequacy of an agency's procedures is not. *Sterling,* 749 F.Supp. at 1208.

■ Finally, there is no adequate remedy at law which bars judicial review under the APA. There is no other court that can adequately redress the alleged constitutional violation. The argument that a person in plaintiff's position can seek equitable relief in the United States Claims Court, has been rejected by several courts. *See Marshall Leasing,* 893 F.2d at 1100–1101; *Sterling,* 749 F.Supp. at 1207–08; *Sarit,* 759 F.Supp. at 68. Moreover, plaintiff's due process claim arises under the due process clause of the Fifth Amendment, and as the Ninth Circuit noted in *Marshall Leasing,* "the Claims Court itself repeatedly has refused jurisdiction over any fifth amendment due process claim, reasoning that the due process clause, unlike the just compensation clause, does not mandate compensation by the United States." 893 F.2d at 1101.

In sum, plaintiff's complaint is not barred on the grounds of lack of subject matter jurisdiction, lack of personal jurisdiction, qualified immunity and/or sovereign immunity.

## B. *Summary Judgment Standards*

Summary judgment shall be entered if the pleadings and supplemental evidentiary materials "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). No genuine issue of material fact exists if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party ..." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d

---

legal authority shall not be dismissed nor relief therein be denied on the ground that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States.

**5.** Section 704 of the APA bars judicial review of an agency's action if there is an adequate remedy in another forum. 5 U.S.C. § 704.

**6.** Section 701 of the APA states that the APA does not apply to an action if another statute precludes judicial review or if the contested agency action is one committed by law to agency discretion. *See* 5 U.S.C. § 701; *see also Sterling,* 749 F.Supp. at 1208.

538 (1986). The burden of showing the absence of any genuine issue of material fact rests on the moving party, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986), and all ambiguities and inferences that may reasonably be drawn from the facts must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). However, a non-moving party must do more than show some metaphysical doubt as to the material facts and must "come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. at 1356 (quoting Rule 56(e), Fed.R.Civ.P. (alteration in original)).

Moving for summary judgment is not without its risks to the moving party. A motion for summary judgment searches the record, and it is well settled that if such a search reveals that there are no genuine issues of material fact, but that the law is on the side of the *non-moving* party, then "summary judgment may be rendered in favor of the opposing party even though he has made no formal cross-motion under Rule 56." 10A Charles A. Wright et al., *Federal Practice and Procedure*, § 2720, at 29–30 (2d ed. 1983). *See also Dempsey v. Town of Brighton*, 749 F.Supp. 1215 (W.D.N.Y.1990), *aff'd*, 940 F.2d 648 (2d Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 338, 116 L.Ed.2d 278 (1991); *Siderius, Inc. v. M.V. "Ida Prima"*, 613 F.Supp. 916, 923 (S.D.N.Y.1985) (motion for summary judgment exposes moving party to risk that summary judgment will be granted against him).

Granting summary judgment, *sua sponte*, to the non-moving party, where such a decision is warranted under the law and the undisputed facts, promotes the goal of Rule 56 to expedite the disposition of cases. 10A Charles A. Wright et al., *Federal Practice and Procedure*, § 2720, at 33. As the Second Circuit has noted, where "the evidence of the facts bearing on the issues arising out of the complaint is all before the court in affidavit form, it is most desirable that the court cut through mere outworn procedural niceties and make the same decision as would have been made had [the non-moving party] made a cross-motion for summary judgment." *Local 33, Int'l Hod Carriers Bldg. & Common Laborers' Union of America v. Mason Tenders Dist. Council of Greater New York*, 291 F.2d 496, 505 (2d Cir.1961).

## C. Due Process Claim

After searching the record and reviewing the relevant case law, I conclude that the DEA did not provide plaintiff with adequate notice of the administrative forfeiture proceeding and, therefore, that it deprived him of his right to due process of law secured under the Fifth Amendment. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1949). If the name and address of an individual is reasonably ascertainable, then notice by publication is insufficient to satisfy due process. *Id.* "Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of *any* party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable." *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 800, 103 S.Ct. 2706, 2712, 77 L.Ed.2d 180 (1983); *see also United States v. Borromeo*, 945 F.2d 750, 752 (4th Cir. 1991); *Cepulonis v. United States*, 543 F.Supp. 451, 453 (E.D.N.Y.1982).

Under most circumstances, notice sent by ordinary mail is sufficient to discharge the Government's due process obligations. *See Weigner v. City of New York*, 852 F.2d 646 (2d Cir.1988), *cert. denied*, 488 U.S. 1005, 109 S.Ct. 785, 102 L.Ed.2d 777 (1989) ("The Supreme Court has repeatedly held that notice by first-

class mail is sufficient, notwithstanding the Court's obvious awareness that not every first-class letter is received by the addressee."). However, when the Government sends notice by mail, the proper inquiry is not simply whether the Government sent the notice, but whether it acted reasonably *under the circumstances* in relying on the mail as a means to apprise the interested party of the pending action. *Id.* at 649 ("The proper inquiry is whether the state acted reasonably in selecting means likely to inform persons affected, not whether each property owner actually received notice.").

In this action, the DEA sent plaintiff a notice by certified mail, but three weeks later it was returned as unclaimed. Thereafter, the DEA made no other attempts to notify plaintiff of the forfeiture proceedings, except to publish notice in *USA Today*. Neither plaintiff nor his lawyer learned of the forfeiture until after July 21, 1989, the day the DEA declared the money forfeited, a point well beyond the twenty day period in which plaintiff could have contested the forfeiture in court, *see* 19 U.S.C. § 1608, and the thirty day period in which he could have petitioned for an administrative remission or mitigation of the forfeiture. *See* 28 C.F.R. §§ 9.3 and 9.5.

Because it was unreasonable for the DEA, on the facts of this case, not to make an additional attempt to provide plaintiff with notice after discovering that he had not received the notice sent on June 2, 1989, I find that the DEA did not provide plaintiff with notice reasonably calculated under the circumstances to apprise him of the pending forfeiture proceeding.

■ It was unreasonable for the DEA to ignore its discovery that plaintiff had not received the original mailed notice. The Government must use the information it possesses to determine whether to rely on a particular method of notice; it may not ignore information that reveals that a method of notice is inadequate to provide an interested party with notice. "For example, where the state *knows* that an interested party does not reside at the mailing address, or where the recipient is *known* to

be someone who could not understand mailed notice, then due process may require more than sending a letter to the address on file." *Weigner*, 852 F.2d at 650 n. 4 (citations omitted) (emphasis added). Similarly, if the Government knows that an interested party does not reside at his home address, but still relies on a notice sent only to that address, then the Government has not acted reasonably. *Robinson v. Hanrahan*, 409 U.S. 38, 93 S.Ct. 30, 34 L.Ed.2d 47 (1972); *Cepulonis*, 543 F.Supp. at 453.

After the DEA discovered that plaintiff had not received the notice it sent on June 2, it should have taken additional steps to notify him. *Cf. Gutt v. United States*, 641 F.Supp. 603 (W.D.Va.1986) (where notice sent to interested party was returned to the DEA as unclaimed and where DEA knew party was represented by counsel, the DEA's failure to also send notice to the attorney deprived party of due process). The Government's duty to act reasonably does not end when it drops the notice in the mail; it is simply unreasonable for the Government to rely on a notice it knows has failed to reach the intended recipient, for the same reason that it is unreasonable for the Government to rely on notice sent to an address at which it knows a party no longer resides.

■ Certainly, the Government does not have to go to extraordinary lengths to notify an interested party. Had the DEA made a reasonable effort to notify plaintiff, but been unable to locate him, then it could have relied on the notice published in *USA Today* to satisfy its due process obligation. Due process requires only that the Government provide notice that is reasonably calculated to notify a party of a pending action. *Mullane*, 339 U.S. at 315, 70 S.Ct. at 657. The DEA, however, did not take *any* steps to provide plaintiff with notice after discovering that plaintiff had not received the June 2 notice.

The most troubling aspect of this case is that the DEA had information it could have used to locate plaintiff, but failed to use it. According to the affidavit of DEA Special Agent John Ferster, the DEA relied on

reports submitted by the RPD to determine whether probable cause existed to commence a forfeiture proceeding against the $32,000. (Ferster Aff. at Ex. A). The reports contained, *inter alia*, the names of the arresting officers, the felony complaint against plaintiff completed by RPD Officer M. Mazzeo, and a letter from the RPD to the Investigative Unit Chief of the Monroe County District Attorney's Office that contained the RPD's Special Criminal Investigation Section's recommendations regarding the disposition of the case against plaintiff. The reports also contained plaintiff's 32 Buena Place address, and were most likely the source of the DEA's knowledge of the address.

It was evident that state criminal charges were pending and a simple telephone call could have shed light on those proceedings and plaintiff's status. Yet, the agents did nothing.

Had the DEA agents turned to the reports after learning that plaintiff had not received the notice they should have been able to use that information to find out the status of plaintiff's criminal case, the name of his attorney, or plaintiff's new address. With that information, they should have sent another notice either to plaintiff's attorney or, if known, to plaintiff's new address. The DEA, however, did not even look at the reports and instead was content to rely on the notice published in a national newspaper to apprise plaintiff of the forfeiture proceeding. That was simply unreasonable under the circumstances.

As the Second Circuit recently noted, " '[f]orfeitures are not favored; they should be enforced only when within both the letter and spirit of the law.' " *Onwubiko*, at 1400 (quoting *United States v. One Ford Coach*, 307 U.S. 219, 226, 59 S.Ct. 861, 865, 83 L.Ed. 1249 (1939). Here, by failing to provide plaintiff with adequate notice, the DEA did not act within either the letter or the spirit of the law, and thereby deprived plaintiff of his right to due process. *See Gutt*, 641 F.Supp. 603. Accordingly, summary judgment setting aside the administrative forfeiture of the

$32,000 in U.S. currency is granted in favor of plaintiff.

This decision is without prejudice to the DEA commencing another administrative forfeiture proceeding consistent with the requirements of the law.

### D. *Freedom of Information Act Claim*

 Defendants contend that plaintiff's claim relating to his FOIA requests should be dismissed because plaintiff's failure to provide the DEA with a notarized signature prevented it from releasing the requested information. I agree.

Plaintiff's claim that the DEA failed to comply with his FOIA requests is groundless. The DEA did not refuse to comply with plaintiff's FOIA requests. Rather, the DEA was unable to process plaintiff's request because plaintiff failed to provide it with a notarized signature or other proof of identification.

28 C.F.R. § 16.41(d)(1), a regulation which implements the Privacy Act of 1974, 5 U.S.C. 552(a), requires that all FOIA requests be accompanied by a notarized signature. This requirement, which ensures that privileged information is released only to the proper party, applies to "all records which are contained in systems of records maintained by the Department of Justice and which are retrieved by an individual's name or personal identifier." 28 C.F.R. § 16.40(a).

The DEA promptly notified plaintiff that it would be unable to process his request until he submitted a notarized signature, and even sent him a form that he could use to satisfy that requirement. Plaintiff never completed the form.

In any event, the DEA sent plaintiff the Declaration of Forfeiture, which states that the $32,000 was forfeited to the United States pursuant to 19 U.S.C. 1609, and as part of this lawsuit, the DEA submitted a copy of the notice which it sent to plaintiff before the forfeiture proceeding. Therefore, plaintiff's request under FOIA is essentially moot.

Consequently, defendants' motion to dismiss plaintiff's claim under the FOIA is granted.

## CONCLUSION

Defendants' motion for summary judgment dismissing plaintiff's due process claim is denied and defendants' motion dismissing plaintiff's FOIA claim is granted.

Summary judgment vacating the administrative forfeiture of the $32,000 is granted, *sua sponte*, in favor of plaintiff.

IT IS SO ORDERED.