**UNITED STATES of America, Plaintiff–Appellee,**

v.

**ONE 1985 MERCEDES–BENZ, 300 SD, VIN WDBCB20C6FA177831, Defendant,**

**and**

**Sadrudin Kabani, Claimant–Appellant.**

**No. 91–35883.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 4, 1993.

Decided Jan. 14, 1994.

Robert Taylor–Manning, Stanislaw, Ashbaugh, Riper, Peters & Beal, J. Ronald Sim, Stoel, Rives, Boley, Jones & Grey, Seattle, WA, for claimant-appellant.

Bonnie E. MacNaughton, Asst. U.S. Atty., Patricia Olson, U.S. Customs Service, Seattle, WA, for plaintiff-appellee.

Before: TANG, FARRIS, and RYMER, Circuit Judges.

FARRIS, Circuit Judge:

## I

A person who transports more than $10,000 into or out of the United States must file a report with the federal government. *See* 31 U.S.C. § 5316 (1988).[1] The issue is whether a car used to export currency in violation of Section 5316's reporting requirements may be forfeited under the Espionage Act, 22 U.S.C. § 401 (1988), which provides for the forfeiture of vehicles used in exporting "any arms or munitions of war or other articles in violation of law."[2]

Sadrudin Kabani drove into Canada with $1,082,100.00 in United States currency in the trunk of his 1985 Mercedes–Benz, 300 SD. He never reported the money as required by Section 5316. When a Canadian customs officer discovered the currency, the United States government seized the Mercedes and charged Kabani with failure to report the export of currency in violation of 31 U.S.C. §§ 5312, 5316 (1988) and with two counts of money laundering in violation of 18 U.S.C. § 1956(a)(2) (1988 & Supp. II 1990). Kabani was never convicted of any of these charges. Instead, he entered a guilty plea to the charge of making false statements to customs officials in violation of 18 U.S.C. § 1001 (1988). The other charges were dismissed.

The government filed a claim for forfeiture of the Mercedes under 22 U.S.C. § 401. Ka-

1. 31 U.S.C. § 5316(a) provides:

[A] person ... shall file a report under subsection (b) of this section when the person ... knowingly—
1) transports, is about to transport, or has transported, monetary instruments of more than $10,000 at one time—
(A) from a place in the United States to or through a place outside the United States; or
(B) to a place in the United States from or through a place outside the United States....

2. 22 U.S.C. § 401(a) provides:

Whenever an attempt is made to export or ship from or take out of the United States any arms or munitions of war or other articles in viola-

tion of law, or whenever it is known or there shall be probable cause to believe that any arms or munitions or war or other articles are intended to be or are being or have been exported or removed form the United States in violation of law, the Secretary of the Treasury, or any person duly authorized for the purpose by the President, may seize and detain such arms or munitions of war or other articles and may seize and detain any vessel, vehicle, or aircraft containing the same or which has been or is being used in exporting or attempting to export such arms or munitions of war or other articles. All arms or munitions of war and other articles, vessels, vehicles, and aircraft seized pursuant to this subsection shall be forfeited.

bani moved for summary judgment to dismiss the forfeiture claim. Concluding that Kabani's failure to report the money permitted the car to be forfeited under Section 401, the district court denied Kabani's summary judgment motion. *United States v. One 1985 Mercedes–Benz, 300 SD,* 741 F.Supp. 849, 850 (W.D.Wash.1990). On undisputed facts, the court entered a judgment of forfeiture.

Kabani appeals. We reverse. Congress established the scheme for the forfeiture of property involved in Section 5316 violations in 31 U.S.C. § 5317 (1988) and 18 U.S.C. § 982 (Supp.IV 1992). Cars used to export currency in violation of 31 U.S.C. § 5316 are subject to forfeiture as provided in 18 U.S.C. § 982 and may not be forfeited under 22 U.S.C. § 401.

## II

■ Congress has specified two ways in which violations of Section 5316 may lead to the forfeiture of property: 1) under 31 U.S.C. § 5317, money that was exported or imported in violation of Section 5316's reporting requirements is subject to forfeiture in a civil proceeding,[3] and 2) 18 U.S.C. § 982(a)(1) provides that when sentencing a person convicted of violating Section 5316, a court "shall order the person to forfeit to the United States any property ... involved in such offense...."

The language and structure of 31 U.S.C. § 5317 and 18 U.S.C. § 982 reveal that cars "involved" in the illegal exportation of currency may only be forfeited after the defendant has been convicted of violating Section 5316. Section 5317 specifies that "any monetary instrument" exported in violation of section 5316 may be forfeited to the United States, but does not require that the forfeiture occur in conjunction with the sentencing of a convicted defendant. Section 982 subjects to forfeiture "any property involved" in

a Section 5316 violation, but only after the defendant has been convicted. Further, Congress allowed for both the civil forfeiture, under 18 U.S.C. § 981 (Supp. IV 1992), and the criminal forfeiture, under 18 U.S.C. § 982, of "property involved" in violations of reporting requirements included in other sections of Title 31. But Congress included "property involved" in Section 5316 violations only in the criminal forfeiture statute, 18 U.S.C. § 982. *Compare* 18 U.S.C. § 981(a)(1) (allowing for the civil forfeiture of property involved in violations of 31 U.S.C. §§ 5313(a) and 5324(a)) *with* 18 U.S.C. § 982(a)(1) (allowing for the criminal forfeiture of property involved in violations of 31 U.S.C. §§ 5313(a), 5316, and 5324).

In recent years, Congress has frequently amended the general forfeiture statutes in Title 18 and the currency reporting statutes in Title 31. With each amendment, Congress has maintained the present forfeiture scheme for Section 5316 violations under which the illegally exported or imported money may be forfeited in a civil proceeding under 31 U.S.C. § 5317 and other property involved in the violation may be forfeited in a criminal proceeding under 18 U.S.C. § 982. For example, 31 U.S.C. § 5324(a) prohibits structuring transactions to avoid the reporting requirements of 31 U.S.C. §§ 5313(a) and 5325. In 1992 Congress amended Section 5324 by adding subsection (b), which included a new offense for structuring transactions to avoid Section 5316's reporting requirements. When Congress amended the forfeiture statutes to accommodate Section 5324(b), it included civil and criminal forfeiture provisions for that offense in 31 U.S.C. § 5317(c) and 18 U.S.C. § 982, and continued to allow civil and criminal forfeiture for violations of Section 5324(a) to proceed under 18 U.S.C. §§ 981 and 982.[4]

---

**3.** 31 U.S.C. § 5317(c) states that:

If a report required under section 5316 with respect to any monetary instrument is not filed (or if filed, contains a material omission or misstatement of fact), the instrument and any interest in property, including a deposit in a financial institution, traceable to such instrument may be seized and forfeited to the United States Government....

**4.** *See* Annunzio–Wylie Anti–Money Laundering Act, Pub.L. 102–550, § 1525, 106 Stat. 4064 (1992). 18 U.S.C. § 981(a)(1)(A) was amended to refer only to Section 5324(a) and 31 U.S.C. § 5317(c) was amended to include a reference to Section 5324(b). 18 U.S.C. § 982 was not amended because it already contained a reference to all of Section 5324.

The government would ignore Section 982's requirement that a conviction of violating Section 5316 is a prerequisite to the forfeiture of cars used in illegally exporting currency. Originally, when Kabani was charged with violating Section 5316, the government sought the forfeiture of his car under Section 982. After Kabani accepted a plea bargain and the Section 5316 charge was dropped, the government abandoned its Section 982 forfeiture claim and turned to Section 401, which allows property to be forfeited before a defendant has been convicted of illegally exporting goods.

Courts have applied Section 401's forfeiture provisions to a variety of illegally exported goods. Section 401 has been used to authorize the seizure of stolen telecommunications equipment exported in violation of 18 U.S.C. § 2314 (Supp.IV 1992). *United States v. Ajlouny,* 629 F.2d 830, 833, 835–36 (2nd Cir.1980), *cert. denied,* 449 U.S. 1111, 101 S.Ct. 920, 66 L.Ed.2d 840 (1981). Since the Second World War, articles exported in violation of the Export Administration Act, 50 U.S.C.App. § 2401 *et seq.,* have been forfeited under Section 401. *See, e.g., Zarranz v. United States,* 182 F.2d 650, 651–52 (5th Cir.1950); *United States v. 251 Ladies Dresses,* 53 F.Supp. 772, 774 (S.D.Tex.1943); *see also United States v. Marti,* 321 F.Supp. 59, 63 (E.D.N.Y.1970) (finding that "the export seizure provisions of section 401 were designed to apply to violations of the Export [Administration] Act"). Nothing suggests that the application of Section 401 in these cases generated any conflict with other statutes.

Citing *United States v. One 1980 Mercedes–Benz, 500 SE,* 772 F.2d 602 (9th Cir. 1985), the government contends that we have previously allowed a car involved in a violation of the Export Administration Act to be forfeited under Section 401, even though the Export Administration Act provides only for post-conviction forfeitures. 50 U.S.C.App. § 2410(g) (1988). But our decision in *One 1980 Mercedes–Benz* is not pertinent to our resolution of Kabani's appeal. In *One 1980 Mercedes–Benz,* the district court ordered the forfeiture of the car before Congress amended the Export Administration Act and

added a forfeiture provision. *See id.* at 604; *see also* Act of July 12, 1985, Pub.L. No. 99–64, § 112, 99 Stat. 120, 146–47 (amending the Export Administration Act). We never were called upon in *One 1980 Mercedes–Benz* to address the issue of whether the amendment of the Export Administration Act affected the availability of forfeiture under Section 401. Moreover, unlike the monetary transaction reporting statutes, 31 U.S.C. §§ 5311–5328, and the general forfeiture statutes, 18 U.S.C. § 981–982, Congress has explicitly stated that the remedies available under the Export Administration Act are not intended to supersede judicial or administrative remedies available under other statutes or regulations. 50 U.S.C.App. §§ 2410(i), 2416 (1988).

The government is precluded from using Section 401 in a manner that would undermine the forfeiture provisions of more recently enacted laws. "Forfeitures are not favored; they should be enforced only when within both letter and spirit of the law." *United States v. One 1936 Model Ford V–8 De Luxe Coach,* 307 U.S. 219, 226, 59 S.Ct. 861, 865, 83 L.Ed. 1249 (1939).

■ Vehicles used to export currency in violation of 31 U.S.C. § 5316 are subject to forfeiture as provided in 18 U.S.C. § 982 and may not be forfeited under 22 U.S.C. § 401. Under Section 982, a car involved in the illegal exportation of currency may be forfeited only after the defendant has been convicted of violating Section 5316. The government permitted Kabani's plea bargain to dismiss the charge of exporting currency in violation of Section 5316. His motion for summary judgment on the government's forfeiture claim should have been granted.

REVERSED.